[No. 7748.    Decided April 1, 1909.]

FRED RANGENIER, *Respondent*, v. SEATTLE ELECTRIC
COMPANY, *Appellant.*[1]

CARRIERS—PASSENGERS—SETTING DOWN INTOXICATED PASSENGER.
Where the jury, upon conflicting evidence, must have found that a
street car was suddenly started while the plaintiff was in the act of
alighting, the company would be liable for negligence causing in-
juries whether the plaintiff was drunk or sober.

EVIDENCE—ADMISSIBILITY—RESPONSIVENESS.    Where a witness is
asked if he noticed plaintiff's condition as to sobriety, an answer
that he thought he was drunk may properly be stricken as not re-
sponsive.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE—FACTS OTHERWISE
ESTABLISHED.    It is not prejudicial error to strike the statement of
a witness that he thought the plaintiff was drunk, where afterwards
he was asked what indications made him know plaintiff's condition,
and he answered that he smelled as if he was drinking whiskey.

SAME—FAILURE TO ASK PROPER QUESTION.    Defendant cannot com-
plain of the striking of an answer of a witness that he thought
plaintiff was drunk, where he did not pursue the inquiry, or ask
whether plaintiff was intoxicated.

TRIAL—MISCONDUCT OF COUNSEL—ARGUMENT TO JURY—HARMLESS
ERROR.    It is not ground for reversal that counsel, in argument to
the jury, stated that he had been a superior judge, and would not
believe a certain witness under oath, where the court upon request
at once instructed the jury that the witness had not been impeached
and to disregard the statement, and the testimony of the witness
related only to an incidental fact, and not to the pivotal question
in issue.

APPEAL—REVIEW—HARMLESS ERROR—INSTRUCTIONS.    It is not
error to refuse to give an instruction in the form requested, if given
in language of the court's own choosing.

CARRIERS—CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS AS TO PROXI-
MATE CAUSE.    Upon an issue as to the contributory negligence of a
passenger in alighting from a street car, an instruction allowing re-
covery if the plaintiff was not guilty of negligence "which was the
proximate cause of the accident," is not erroneous in failing to
qualify "proximate cause," when considered in connection with an-

[1]Reported in 100 Pac. 842.

other instruction to the same effect referring to "any negligence on his part which proximately or naturally contributed to his injury, and without which such injury would not have happened."

DAMAGES—PERSONAL INJURIES—EXCESSIVE VERDICT.  A verdict for $9,500 for the loss of a foot by a man sixty-four years of age, engaged in the real estate business and earning $150 to $200 per month, is excessive, and should be reduced to $6,000.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 21, 1908, upon the verdict of a jury rendered in favor of the plaintiff, for $9,500, for personal injuries sustained by a passenger in alighting from a street car.  Reversed, and a new trial ordered unless $3,500 is remitted.

*James B. Howe, H. S. Elliott,* and *R. G. Sharpe,* for appellant.

*Albert D. Martin* and *Walter A. Keene,* for respondent.

GOSE, J.—This action, instituted to recover damages for personal injuries, resulted in a verdict and judgment in favor of the plaintiff for $9,500.  The defendant has appealed.

The complaint charges, that the plaintiff was a passenger on one of the defendant's street cars, in the city of Seattle; that he notified the gripman in charge of the car that he desired to get off the car at Eleventh street; that the car stopped at such street; that while the plaintiff was stepping off the car, and before he had time to do so, and while he had one foot on the ground and the other on the car step, with his hand holding to the iron bar upon the car provided for that purpose, the gripman, without any notice or warning to the plaintiff, started the car with a sudden jerk and at a great rate of speed, thereby violently throwing the plaintiff to the ground in such position that his right foot was thrown in front of the car wheels; that the car passed over his foot, and so bruised and mangled it that the plaintiff was compelled to, and did, have it amputated.  The defendant joined issue upon the charge of negligence, and affirmatively pleaded the contributory negligence of the plaintiff.  The reply put in

issue the charge of contributory negligence. The appellant assigns five errors, which we will consider *seriatim*.

(1)   One of appellant's witnesses, after testifying that he was upon the car on which the plaintiff was riding, was asked the following question: "Did you notice his [respondent's] condition as to being under the influence of liquor or not?" Answer. "Well, I think that he was." Whereupon, on the motion of the respondent, this answer was stricken. Thereupon the appellant inquired of the witness as follows:

"Question.   Did you see anything—any indication there about the man which made you know that he was under the influence of liquor? Did you notice anything? Mr. Bell: Objected to on the ground that the question is suggestive. The Court:   He may answer.   Answer: Why, he smelled as if he was drinking whiskey."

The ruling of the court in striking the answer to the first question is assigned as error. The pivotal question in the case, and the one which presumably was controlling with the jury, was whether the car had stopped when respondent started to alight, and if so, was it suddenly started while he was alighting. The sharp conflict in the testimony was on this question. The respondent's witnesses asserted that the car had stopped, and the appellant's witnesses were equally positive that it was going at the ordinary rate of speed. If the car was in motion at such time, the respondent, whether free from liquor or under its influence, could not recover under the instructions of the court. If we credit the jury with giving any heed to the court's instructions, we cannot escape the conclusion that they believed that the car had stopped when the respondent undertook to step off, and that, while he was in the act of stepping off, the appellant put the car into sudden and rapid motion without any warning or notice to the respondent. This being true, whether the respondent was drunk or sober would be no bar to his recovery. His condition as to sobriety would be only a circumstance touching his knowledge as to whether the car had stopped before he attempted to step off.

A reading of the question the answer to which was stricken will disclose that it was less comprehensive than the second question to which the court directed an answer. The court might properly have stricken the answer because it was not responsive to the question. The appellant, having been permitted to continue the inquiry into the conduct of the respondent which led the witness to form his opinion as to his being drunk, cannot complain because the witness rested his opinion on the one fact that he "smelled as if he was drinking whiskey." The questions called for all the indications which "made you know" that the respondent was under the influence of liquor.

Nor can the appellant complain because he did not interrogate the witness as to whether there were other actions or evidences from which he formed his opinion. Nor can it complain in that it failed to ask the witness the question, Was the respondent drunk or sober at the time of the accident, or was he under the influence of liquor at such time? The authorities cited by the appellant announce the correct rule as to the admissibility of this class of evidence, but we do not regard them as applicable to the facts in the case at bar. The court permitted the appellant to inquire of five witnesses whether the respondent was intoxicated at the time of the injury. Indeed, the entire course of the trial subsequent to the striking of the answer complained of, gave the appellant wide latitude in proving the respondent's condition. Had it pursued the inquiry with the witness, and had the court then denied it, the right to ask the question, Was the respondent drunk or sober, or was he or was he not intoxicated at the time of the injury, a different question would be presented.

(2) During the course of the argument to the jury, one of the respondent's counsel said:

"Gentlemen of the jury. I once occupied the position upon the bench now occupied by His Honor. I have known

Dr. Willis for fifteen years. He has come before me as a witness. I would not believe him under oath."

Whereupon one of the appellant's counsel, addressing the court, said:

"If it please your honor, I object to the argument of counsel for the plaintiff. Dr. Willis has not been impeached by any one. Counsel for the plaintiff has no right to state to the jury that he would not believe Dr. Willis under oath. I request the court to instruct the jury to disregard the statement."

Whereupon the court said to the jury:

"Gentlemen of the jury. Dr. Willis has not been impeached by any witness, and you are instructed to disregard the statements of counsel in reference to Dr. Willis not being believed under oath."

This remark of counsel is assigned as error. The cases from this court excluding suggestions in personal injury suits, to the effect that the defendant carries indemnity insurance, we do not regard as applicable. Nor do we think this case is controlled by *Spencer v. Arlington*, 49 Wash. 121, 94 Pac. 904. In that case the court, in the absence of the jury, had commented on the weight of the evidence. Counsel said, in arguing the case to the jury:

"It has been said here by one who knows more about these things than I, that no one in the exercise of common sense could look at the conditions there and say that it was not a highway."

This was held error in that its necessary effect was to impress on the mind of the jury the belief that the statement had been made by the court. A jury, justly regarding the court as an impartial trier, is quick to adopt or be influenced by any suggestions it may make. But the fact that the learned counsel had been at one time a superior judge would not give to his remarks the weight which the jury attaches to the remarks of the trial judge. When the reason for the influence ceases, the influence itself ceases. We must credit

the jury with the possession of ordinary common sense, and such presumption leads to the conclusion that a jury understands that, when a lawyer retires from the bench and engages in the trial of a case, he ceases to occupy the position of an impartial arbiter, and becomes a partisan. What he may then say to a jury in the heat of an argument has no greater weight than like observations from other equally reputable counsel. It is the duty of the trial lawyer to be zealous in the advocacy of his client's cause. The common opinion of all mankind has fixed this as the measure of his professional responsibility. In the discharge of this duty a reasonable latitude must be allowed him. It is true that there is a border line beyond which he cannot transgress. It is often difficult to define and establish this boundary, and it is therefore only in clear cases of abuse of this privilege that the courts will reverse a case on account of misconduct of counsel. Counsel are but the representatives of the parties to the action. The lawyer speaks for his client, and the jury, in recognition of this fact, presumably treats his argument from this viewpoint. Indeed, experience and observation teach that fairness of counsel in the presentation of a cause is usually more persuasive with the jury than is an effort to secure a verdict by means of intemperate speech.

This court has always been slow to reverse a case because of the intemperate speech of counsel. In *Abby v. Wood*, 43 Wash. 379, 86 Pac. 558, the court, in considering the question of remarks of counsel, at page 382, said:

"Exception is also taken to certain remarks made by the respondent's attorney in the presence of the jury. While perhaps not entirely proper, yet, we do not believe that these remarks were susceptible of any injury to appellant's cause, or that they were made from any improper spirit."

In *Thomson v. Issaquah Shingle Co.*, 43 Wash. 253, 86 Pac. 588, an affidavit of an absent witness had been admitted and read in evidence. This had been done by agreement of

counsel to avoid a continuance of the case. Counsel commented on this affidavit. At page 258 the court say:

"Counsel for respondent did, perhaps, to some extent, transgress the rules of propriety, but we cannot say that his acts were prejudicial, especially in the light of the court's explanation and instructions immediately given to the jury."

In *Yakima Valley Bank v. McAllister*, 37 Wash. 566, 79 Pac. 1119, 107 Am. St. 823, 1 L. R. A. (N. S.) 1075, the court at page 576, say:

"Nor do we think that the somewhat heated expressions of counsel in the argument of the case would justify a reversal of the judgment."

"The remedy to correct misconduct of counsel is to move the trial court to act in the matter, and except to its refusal so to do, if it does so refuse; it is not enough merely to except to the supposed misconduct." *State v. Van Waters*, 36 Wash. 358, 78 Pac. 897.

In *State v. Boyce*, 24 Wash. 514, 64 Pac. 719, at page 528, the court, speaking through Mr. Justice Dunbar, say:

"Some latitude must be given to counsel in the heat of discussion, and, as has been often said, if every apparent indiscretion which a counsel is guilty of in his remarks to the jury were to be the subject of review, the appellate court would have no time to pass upon graver questions, but its time would be occupied in reviewing remarks of counsel."

See, also, *Taylor v. Ballard*, 24 Wash. 191, 64 Pac. 143. Indulging the presumption that the jury applies common sense to the consideration of a case, we are not willing to reverse on account of the extravagant statement made by counsel. However, we do not want to be understood as indorsing remarks of this character. We have heretofore said that the crucial question in the case was, whether the car had stopped when the respondent started to step off, and whether the car was at such time suddenly put in motion. The witness to whose testimony this remark was addressed had not testified as to this fact. His testimony was that some time after the accident, when the witness saw the respondent

at the hospital, the latter was intoxicated. This was only one of the incidental facts which arose during the progress of the trial. This being true, we cannot free our minds from the conviction that the prompt action of the court in instructing the jury that the witness had not been impeached, and that they should disregard the statement of counsel, satisfied the requirements of the law. The appellant urges that the injury resulting from the statement was aggravated by the fact that the counsel had formerly been a judge. If weight is attached to the unsworn statement of an ex-judge who is counsel in a cause, delivered in the heat of argument, it is reasonable to assume that the jury heeded the admonition of the trial judge to disregard such statement.

"That the practice complained of is highly reprehensible, no one can doubt. It ought in every instance to be promptly repressed." *Hayes v. Smith*, 62 Ohio St. 161, 188, 56 N. E. 879.

This expression has our heartiest indorsement. It is no part of the duty of the advocate to obtrude his personal opinion upon the jury, either as to the veracity of a witness or the weight of the evidence. Had not the trial court promptly directed the jury as it did, or had counsel persisted in making intemperate remarks outside the record, we would feel it our duty to reverse the case on account of the misconduct of counsel.

(3) The appellant assigns error in the refusal of the court to instruct the jury as follows:

"You are instructed that if you find from the evidence that the said Fred J. Rangenier stepped or attempted to step from the car while it was in motion, then said Rangenier in so doing assumed all the risks of such attempt and was guilty of contributory negligence barring his recovery and your verdict must be for the plaintiff."

The court instructed thereon as follows:

"You are further instructed that, even though you find that the defendant company failed to stop at the point where

plaintiff indicated his desire to alight, still it would consti-
tute such negligence on the part of the plaintiff in attempt-
ing to alight from a moving car after having passed such
desired point as to bar his recovery in the event of injury re-
sulting therefrom. Under such circumstances if the car
failed to stop as requested by plaintiff, it was his duty to
remain on the car until the car stopped, and if necessary look
to the company for any damages he may have suffered by
reason of being carried beyond his destination."

The two instructions are identical in meaning, and the one
given certainly goes to the limit in favor of the appellant.
We have uniformly held that the court need not adopt the
exact language of a requested instruction, but that it may,
without committing error, express the same meaning in words
of its own choosing. *State v. Anderson*, 30 Wash. 14, 70
Pac. 104; *Smith v. Michigan Lum. Co.*, 43 Wash. 402, 86
Pac. 652.

(4) Error is assigned to the giving of the following in-
struction:

"You are instructed that whether or not a passenger has
been guilty of negligence in alighting from a street car is
a question of fact for the jury to determine, and if in this
case you find from a fair preponderance of the evidence that
the injury sustained by the plaintiff was due to carelessness
or negligence on the part of the gripman in starting the
car upon which plaintiff was a passenger before he had suf-
ficient time to alight then your verdict must be in favor of
plaintiff and against the defendant in such sum as will fully
compensate plaintiff for all injuries sustained by him, pro-
vided you further find that the plaintiff was not guilty of
negligence which was the proximate cause of the accident."

It is urged that the words "proximate cause" should have
been qualified in this instruction. In other words, that the
instruction placed too great a burden upon the appellant.
The court had theretofore instructed as follows:

"You are further instructed that, even if you find that the
defendant company was guilty of the negligent acts com-
plained of in plaintiff's complaint, and that such negligence

was the cause of the alleged or any injury to the plaintiff; nevertheless if you find that the plaintiff was guilty of any negligence on his part which proximately or naturally contributed to his injury, and without which such injury would not have happened, then plaintiff cannot be permitted to recover in this action and your verdict must be for the defendant."

Both of these instructions have support in the decided cases. While we concede that the latter instruction is the more exact statement of the law of proximate cause, yet we do not conceive that they are so at variance as to require a reversal of the case. We are not willing to assume that the jury analyzed the words with such a degree of nicety as to have been misled by the instruction to which the objection is made, when the same is taken in connection with the one which we have just quoted. The instructions taken as a whole correctly informed the jury as to the governing rule. This is all the law requires. *White v. Territory*, 1 Wash. 379, 19 Pac. 37; *Sullivan v. Wood & Co.*, 43 Wash. 259, 86 Pac. 629, 117 Am. St. 1047; *Carstens & Earles v. Parker*, 26 Wash. 702, 67 Pac. 1134.

(5) In this assignment it is urged that the verdict, which was for $9,500, was excessive. Under this head the appellant says: "The ultimate result of the accident was the amputation of one of plaintiff's legs three or four inches above the ankle." The evidence shows that the respondent was sixty-four years of age, in good health at the time of the injury, and that he was engaged in the real estate business and earning from $150 to $200 per month.

"It is a fact, lamentable as it may be, that the earning capacity of men decreases after middle life, and usually decreases very rapidly  .   .   .   .   While this court dislikes to interfere with the prerogative of the jury in passing upon questions of fact, when a verdict rendered shows conclusively that the judgment could not have been based upon the testimony produced, it becomes its duty to interfere." *Vowell v. Issaquah Coal Co.*, 31 Wash. 103, 71 Pac. 725.

We think, therefore, in view of the respondent's age, that the verdict was excessive to the extent of $3,500.

The judgment of the court below is therefore reversed; and if the respondent elects to accept $6,000 and costs in the court below, within ten days after the remittitur is filed, then a new judgment will be entered for that amount; otherwise a new trial is granted. The appellant will recover its costs in this court.

ALL CONCUR, except PARKER and MORRIS, JJ., who took no part.